IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| 555 4th Street, NW | ) |
| Washington, DC  20530 | ) |
|  | ) |
| THE CONSUMER FINANCIAL PROTECTION | ) |
| BUREAU | ) |
| 1700 G Street, NW | ) |
| Washington, DC 20552 | ) |
|  | ) |
| THE STATE OF ALABAMA, | ) |
| 501 Washington Avenue | ) |
| Montgomery, AL  36130 | ) |
|  | ) |
| THE STATE OF ALASKA, | ) |
| 1031 W. 4th Avenue, Ste. 200 | ) |
| Anchorage, AK  99501 | ) |
|  | ) |
| THE STATE OF ARIZONA, | ) |
| 1275 W. Washington | ) |
| Phoenix, AZ  85007 | ) |
|  | ) |
| THE STATE OF ARKANSAS, | ) |
| 323 Center Street, Suite 200 | ) |
| Little Rock, Arkansas  72201 | ) |
|  | ) |
| THE STATE OF CALIFORNIA, | ) |
| 455 Golden Gate Avenue, Ste. 14500 | ) |
| San Francisco, CA 94102-7007 | ) |
|  | ) |
| THE STATE OF COLORADO, | ) |
| 1525 Sherman Street – 7th Floor | ) |
| Denver, Colorado 80203 | ) |
|  | ) |
| THE STATE OF CONNECTICUT, | ) |
| 55 Elm Street, P.O. Box 120 | ) |
| Hartford, CT  06141-0120 | ) |
|  | ) |
| THE STATE OF DELAWARE, | ) |
| 820 N. French Street | ) |
| Wilmington, DE  19801 | ) |
|  | ) |

THE STATE OF FLORIDA,                      )
3507 E. Frontage Road                      )
Suite 325                                  )
Tamp, FL 33607                             )
                                           )
THE STATE OF GEORGIA,                      )
40 Capitol Square, S.W.                    )
Atlanta, Georgia 30334                     )
                                           )
THE STATE OF HAWAII,                       )
425 Queen Street                           )
Honolulu, Hawaii  96813                    )
                                           )
THE STATE OF IDAHO,                        )
700 W. Jefferson St.                       )
P.O. Box 83720                             )
Boise, ID 83720-0010                       )
                                           )
THE STATE OF ILLINOIS,                     )
500 South Second Street                    )
Springfield, IL 62706                      )
                                           )
THE STATE OF INDIANA,                      )
302 West Washington St., IGCS 5th Fl.      )
Indianapolis, Indiana 46204                )
                                           )
THE STATE OF IOWA,                         )
1305 E. Walnut St.                         )
Des Moines, IA 50319                       )
                                           )
THE STATE OF KANSAS,                       )
120 SW 10th Avenue, 2nd Floor              )
Topeka, KS 66612                           )
                                           )
THE COMMONWEALTH OF KENTUCKY,              )
State Capitol, Suite 118                   )
700 Capital Avenue                         )
Frankfort, Kentucky 40601-3449             )
                                           )
THE STATE OF LOUISIANA,                    )
1185 N. Third Street                       )
Baton Rouge, Louisiana  70802              )
                                           )
THE STATE OF MAINE,                        )
Burton Cross Office Building, 6th Floor    )
111 Sewall Street                          )

2

Augusta, Maine 04330                                          )
                                                             )
THE STATE OF MARYLAND,                                        )
200 Saint Paul Place                                         )
Baltimore, MD  21202                                        )
                                                             )
THE COMMONWEALTH                                              )
OF MASSACHUSETTS,                                            )
One Ashburton Place
Boston, MA 02108                                            )
                                                             )
THE STATE OF MICHIGAN,                                        )
525 W. Ottawa Street                                        )
PO Box 30755                                                )
Lansing, MI 48909                                          )
                                                             )
THE STATE OF MINNESOTA,                                       )
445 Minnesota Street, Suite 1200                            )
St. Paul, MN 55101-2130                                    )
                                                             )
THE STATE OF MISSISSIPPI,                                     )
Post Office Box 22947                                       )
Jackson, MS  39225-2947                                    )
                                                             )
THE STATE OF MISSOURI,                                        )
PO Box 899                                                  )
Jefferson City, MO  65102                                  )
                                                             )
THE STATE OF MONTANA,                                         )
215 N. Sanders                                             )
Helena MT 59624                                            )
                                                             )
THE STATE OF NEBRASKA,                                        )
2115 State Capitol                                         )
Lincoln, NE 68509-8920                                    )
                                                             )
THE STATE OF NEVADA,                                          )
100 North Carson Street                                    )
Carson City, Nevada  89701                                )
                                                             )
THE STATE OF NEW HAMPSHIRE,                                   )
33 Capitol Street                                          )
Concord, New Hampshire 03301                               )
                                                             )
THE STATE OF NEW JERSEY,                                      )
124 Halsey Street – 5th Floor                              )

3

P.O. Box 45029                                      )
Newark, New Jersey 07101                            )
                                                    )
THE STATE OF NEW MEXICO,                            )
PO Drawer 1508                                      )
Santa Fe, NM 87504-1508                             )
                                                    )
THE STATE OF NEW YORK,                              )
120 Broadway                                        )
New York, NY 10271                                  )
                                                    )
THE STATE OF NORTH CAROLINA,                        )
P. O. Box 629                                       )
Raleigh, NC 27602                                   )
                                                    )
THE STATE OF NORTH DAKOTA,                          )
Gateway Professional Center                         )
1050 E Interstate Ave, Ste. 200                     )
Bismarck, ND  58503-5574                            )
                                                    )
THE STATE OF OHIO,                                  )
30 E. Broad St., 14th Floor                         )
Columbus, OH 43215                                  )
                                                    )
THE STATE OF OREGON,                                )
1515 SW 5th Avenue, Ste. 410                        )
Portland, OR 97201                                  )
                                                    )
THE COMMONWEALTH OF PENNSYLVANIA, )
16th Floor, Strawberry Square                       )
Harrisburg, PA  17120                               )
                                                    )
THE STATE OF RHODE ISLAND,                          )
150 South Main Street                               )
Providence, RI 02903                                )
                                                    )
THE STATE OF SOUTH CAROLINA,                        )
1000 Assembly Street, Room 519                      )
Columbia, SC 29201                                  )
                                                    )
THE STATE OF SOUTH DAKOTA,                          )
1302 E. Highway 14, Suite 1                         )
Pierre, SD 57501                                    )
                                                    )
THE STATE OF TENNESSEE,                             )
425 Fifth Avenue North                              )

Nashville, TN 37243-3400        )
        )
THE STATE OF TEXAS,        )
401 E. Franklin Avenue, Suite 530        )
El Paso, Texas 79901        )
        )
THE STATE OF UTAH,        )
350 North State Street, #230        )
Salt Lake City, UT 84114-2320        )
        )
THE STATE OF VERMONT,        )
109 State Street        )
Montpelier, Vermont  05609        )
        )
THE COMMONWEALTH OF VIRGINIA,        )
900 East Main Street        )
Richmond, Virginia 23219        )
        )
THE STATE OF WASHINGTON,        )
1250 Pacific Avenue, Suite 105        )
PO Box 2317        )
Tacoma, WA 98402-4411        )
        )
THE STATE OF WEST VIRGINIA,        )
State Capitol, Room 26E        )
Charleston, WV  25305-0220        )
        )
THE STATE OF WISCONSIN,        )
Post Office Box 7857        )
Madison, Wisconsin 53707-7857        )
        )
THE STATE OF WYOMING, and        )
123 State Capitol Bldg        )
200 W. 24th        )
Cheyenne, WY 82002        )
        )
and        )
        )
THE DISTRICT OF COLUMBIA,        )
441 Fourth Street, N.W., Suite 600-S        )
Washington, DC  20001        )
        )
      Plaintiffs,        )
        )
    v.        )
        )

SUNTRUST MORTGAGE, INC.            )
901 Semmes Ave.                    )
Richmond, Virginia 23224          )
                                   )
            Defendant.             )
_____)

## COMPLAINT

The United States, the Consumer Financial Protection Bureau (the CFPB or Bureau) and the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming; the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia; and the District of Columbia allege as follows:

## INTRODUCTION

1.      This is a civil action filed jointly by the United States and the Bureau; the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming; the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia; and the District of Columbia against SunTrust Mortgage, Inc., for misconduct related to origination and servicing of single family residential mortgages.

2.      As described below, Defendant's misconduct resulted in unfair and deceptive acts and practices in connection with loan servicing, premature and unauthorized foreclosures, violation of homeowners' rights and protections, the use of false and deceptive affidavits and other documents, and the waste and abuse of taxpayer funds.  Each of the allegations regarding Defendant contained herein applies to instances in which defendant, either itself or through its affiliates or subsidiaries, engaged in the conduct alleged.

## THE PARTIES

3.      This action is brought by the United States of America, on behalf of its agencies and departments, acting through the United States Department of Justice and the CFPB.

4.      This action is also brought by the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming; the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia; and the District of Columbia.  Collectively the plaintiffs identified in this paragraph are referred to here as the "Plaintiff States."  This action is brought by the Attorneys General of the Plaintiff States pursuant to consumer protection enforcement authority conferred on them by state law (or, in the case of the District of Columbia, by District of Columbia Law) and pursuant to *parens patriae* and common law authority.  The Attorneys General are authorized to seek injunctive relief, restitution for consumers, disgorgement of unjust enrichment or unlawful gains, and civil penalties for violation of the consumer protection laws of their States.

5.     SunTrust Banks, Inc., one of the nation's largest commercial banking organizations, is a diversified financial services holding company, and is the holding company for its principal subsidiary, SunTrust Bank, which offers a full line of financial and banking services for consumers and businesses.  SunTrust Banks, Inc. is a Georgia corporation, with its principal executive offices in Atlanta, Georgia.

6.     Defendant SunTrust Mortgage, Inc. is a mortgage origination and servicing company and wholly-owned subsidiary of SunTrust Bank.  SunTrust Mortgage, Inc. is a Virginia corporation with its principal place of business in Richmond, Virginia.

7.     The business of Defendant and its subsidiaries and affiliates includes the origination and servicing of mortgage loans.

8.     For this Complaint, Defendant and all of its affiliated entities, during or prior to such time as they were affiliated, are referred to collectively as the "Defendant."

## JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over Defendant because Defendant has transacted business in this District, and because Defendant has committed acts proscribed by the False Claims Act in this District.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, pursuant to 28 U.S.C. § 1345 because this is a civil action commenced by the United States, pursuant to 28 U.S.C. § 1355(a) because this is an action for the recovery or enforcement of a fine or penalty incurred under an Act of Congress, pursuant to 12 U.S.C. § 5565(a)(1) to the extent the claims are "brought under Federal consumer financial law," and pursuant to 31 U.S.C. § 3732(a) to the extent the claims arise under the False Claims Act, 31 U.S.C. §§ 3729 to 3733.

11.     Pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b), this Court has supplemental jurisdiction over the subject matter of the claims asserted by the Plaintiff States in this action because those claims are so related to the claims asserted by the United States and the CFPB that they form part of the same case or controversy, and because those claims arise out of the same transactions or occurrences as the action brought by the United States under the False Claims Act, 31 U.S.C. §§ 3729 to 3733 and the CFPB under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5301 *et seq.*

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 31 U.S.C. § 3732(a).

## I.     BACKGROUND

### A.     Overview of Relevant Federal Programs

#### 1.     The Federal Housing Administration (FHA)

13.     The FHA provides mortgage insurance on loans made by FHA-approved lenders throughout the United States.  Among other things, FHA insures mortgages on "single family" housing, which refers to one- to four- family dwellings.  See, e.g., 12 U.S.C. § 1709; see generally 24 C.F.R. Part 203.

14.     FHA mortgage insurance provides lenders with protection against losses when home buyers default on mortgage loans insured by FHA.  See generally 12 U.S.C. § 1710, 24 C.F.R. Part 203.

15.     FHA-approved lenders, known as Direct Endorsement Lenders, ensure that loans meet strict underwriting criteria, including income-verification, credit analysis, and property appraisal, established by the FHA to be eligible for insurance.  See 24 C.F.R. § 203.5(c)-(e)

(Direct Endorsement requirements for underwriter due diligence, mortgagor income evaluation and appraisal).

16.     The FHA insurance operations are funded by a statutorily established Mutual Mortgage Insurance Fund (MMIF).  12 U.S.C. § 1708(a).  The MMIF is sustained by insurance premiums, and the Secretary of the U.S. Department of Housing and Urban Development is required to provide for an annual actuarial study to assess the financial position of the MMIF.  12 U.S.C. § 1708(a)(4), (7).

17.     The FHA insurance program, by reducing the risk borne by approved lenders, is designed to stimulate lending to creditworthy borrowers, thereby increasing homeownership and aiding local communities in the form of community development, increased tax bases, and related benefits.

**2.      The Department of Agriculture's Rural Housing Service Rural Housing Guarantee Program (RHS)**

18.     The RHS program provides mortgage insurance guarantees for loans made to qualified borrowers for housing in rural communities.  See 7 C.F.R. § 1980.345 (applicant eligibility).  The RHS partners with a broad range of eligible lenders.  When an eligible lender certifies that all program requirements have been met, delivers a completed Loan Closing Report, and pays the guarantee fee, the RHS concurrently executes a loan note guarantee. 7 C.F.R. §§ 1980.309(a) (qualification of lenders), 1980.361 (issuance of loan note guarantee).

19.     The RHS loan program is intended "to assist eligible households in obtaining adequate but modest, decent, safe, and sanitary dwellings and related facilities for their own use in rural areas." 7 C.F.R. § 1980.301(a).

20.     Like the FHA insurance program, the RHS program promotes lending to creditworthy borrowers that meet the Department of Agriculture's underwriting requirements.

### 3. The United States Department of Veterans Affairs (VA) Loan Guaranty Service Home Loan Program

21. The VA Home Loan Program's guaranties are issued to help eligible service members, veterans, reservists and certain unmarried surviving spouses obtain homes, condominiums, residential cooperative housing units, and manufactured homes. 38 U.S.C. §§ 3701(b)(3), 3710(a), 3712. The primary purpose of the VA Home Loan Program is to help such individuals finance the purchase of homes on more advantageous terms than typically would be available to them.

22. The VA provides a repayment guarantee to qualified lenders equal to a specified percentage of the loan upon default of the primary debtor. 38 U.S.C §§ 3702(d), 3712(c)(2)-(3); 38 C.F.R. §§ 36.4202, 36.4225. Only loans meeting the VA's underwriting requirements are entitled to the VA's insurance guarantee.

23. By providing protection in the event of a default, the VA's insurance program encourages lenders to provide financing to veterans.

### 4. The United States Trustee Program

24. The United States Trustee Program is a component of the Department of Justice that seeks to promote the efficiency and protect the integrity of the Federal bankruptcy system. To further the public interest in the just, speedy and economical resolution of cases filed under the Bankruptcy Code, the Program monitors the conduct of bankruptcy parties and private estate trustees, oversees related administrative functions, and acts to ensure compliance with applicable laws and procedures. It also identifies and helps investigate bankruptcy fraud and abuse in coordination with United States Attorneys, the Federal Bureau of Investigation, and other law enforcement agencies.

25.     The primary role of the U.S. Trustee Program is to serve as the "watchdog" over the bankruptcy process.

26.     United States Trustees supervise the administration of liquidation proceedings under Chapter 7 of the Bankruptcy Code, reorganization proceedings under Chapter 11, family farm and fisherman reorganization proceedings under Chapter 12, and "Wage-earner" reorganization proceedings under Chapter 13.

27.     Specific responsibilities of the United States Trustees include appointing and supervising private trustees who administer Chapter 7, 12, and 13 bankruptcy estates (and serving as trustees in such cases where private trustees are unable or unwilling to serve); taking legal action to enforce the requirements of the Bankruptcy Code and to prevent fraud and abuse; referring matters for investigation and criminal prosecution when appropriate; ensuring that bankruptcy estates are administered promptly and efficiently, and that professional fees are reasonable; appointing and convening creditors' committees in Chapter 11 business reorganization cases; reviewing disclosure statements and applications for the retention of professionals; and advocating matters relating to the Bankruptcy Code and rules of procedure in court.

**B.     The Single Family Mortgage Industry**

28.     The single family mortgage industry consists of financial services and other firms that originate, underwrite, securitize, and service mortgages for residential properties designed to house one- to four-family dwellings.

29.     Mortgage origination is the process whereby a lender loans money to a borrower and receives a security interest in property, through a mortgage or comparable device that

secures the loan.  Origination generally includes all the steps from receiving a loan application

through disbursal of the loan proceeds.

30.     For more than thirty years, mortgages typically have been "pooled" to create an

investment vehicle, often denominated as a trust, and interests in the trusts have been sold to

investors that own interests in payment streams generated by principal and interest payments by

the borrowers.

31.     After mortgages are originated, a "servicer" is responsible for mortgage

administration activities, known as servicing activities, which generally include collecting

payments from mortgagors; applying payments made in an agreed-upon order to the mortgagor's

indebtedness; distributing payments after allowable deductions to the investment trust entities for

distribution to investors; making advances to cover delinquent mortgage payments and other

costs, such as the costs of protecting and maintaining properties that collateralize mortgage loans

when mortgagors fail to do so; pursuing collections from delinquent mortgagors; and pursuing

either loss mitigation or foreclosure, as appropriate, to minimize the loss to investors and others

when mortgagors become delinquent on mortgage payments.

**C.      The United States' Stimulus / Rescue Efforts**

32.     Beginning in the fall of 2008, the federal government instituted several measures

to try to stabilize the housing and credit markets and assist troubled homeowners.

33.     In October 2008, the Emergency Economic Stabilization Act of 2008 (EESA) was

passed to promote stability and liquidity in the financial system.  Among other things, EESA

authorized the Secretary of the Treasury to establish the Troubled Asset Relief Program (TARP).

TARP funds were used, in part, to promote various mortgage loan modification programs.

34.     The Making Home Affordable (MHA) Program.  In March 2009, the United
States launched the MHA Program.  The MHA Program included the Home Affordable
Modification Program (HAMP), a Treasury program that uses TARP funds to provide incentives
for mortgage servicers to modify eligible first-lien mortgages.

35.     HAMP uses incentive payments to encourage loan servicers and owners of
mortgage loans or bonds backed by mortgage loans to modify eligible first lien mortgages so that
monthly payments of homeowners who are in default or at imminent risk of default will be
reduced to affordable and sustainable levels.

36.     The Home Price Decline Protection Incentives (HPDP) initiative. The HPDP
initiative is designed to encourage modifications of loans in markets hardest hit by falling home
prices.   The HPDP initiative provides investors with additional incentives for loan modifications
on properties located in areas where home prices have recently declined and where investors are
concerned that price declines may persist.

37.     The Principal Reduction Alternative (PRA).  PRA is designed to encourage the
use of principal reduction in modifications for eligible borrowers whose homes are worth
significantly less than the remaining outstanding principal balances of their first-lien mortgage
loans.  It provides investor incentives to offset a portion of the principal reduction.

38.     The Home Affordable Unemployment Program (UP).  UP is designed to offer
assistance to unemployed homeowners through temporary forbearance of a portion of their
mortgage payments.

39.     The Home Affordable Foreclosure Alternatives Program (HAFA).  HAFA is
designed to provide incentives to servicers, investors and borrowers to utilize short sales and
deeds-in-lieu of foreclosure for HAMP-eligible loans in cases in which the borrower can no

longer afford to stay in their home but want to avoid foreclosure. Under this program, the servicer releases the lien against the property and the investor waives all rights to seek a deficiency judgment against a borrower who uses a short sale or deed-in-lieu when the property is worth less than the outstanding principal balance of the mortgage.

40.     The Second Lien Modification Program (2MP). 2MP is designed to modify second lien mortgages when a corresponding first lien is modified under HAMP.

41.     The FHA-HAMP Program. The FHA-HAMP Program is designed to provide compensation to the holders and servicers of FHA-insured mortgages that are modified under FHA-HAMP, to reduce payments to more affordable levels.

42.     The Treasury/FHA Second-Lien Program (FHA2LP). FHA2LP is designed to facilitate refinancing under the FHA Short Refinance Program by reducing second liens. Treasury provides incentives to participating servicers and investors who agree to partial or full extinguishment of second liens associated with an FHA refinance.

43.     The FHA Refinance for Borrowers with Negative Equity (FHA Short Refinance) Program. This program is partially supported by TARP funds and allows servicers and investors who write down a borrower's principal balance on a non-FHA-insured, existing, underwater, first-lien mortgage loan in connection with a refinancing to obtain FHA insurance on the newly refinanced mortgage. Treasury has provided a TARP-funded letter of credit for up to $8 billion in loss coverage on these newly refinanced FHA loans.

44.     Housing Finance Agency Hardest Hit Fund (HHF). HHF is a TARP-funded program designed to fund foreclosure prevention programs run by state housing finance agencies in states hit hardest by the decrease in home prices and in states with high unemployment rates. Eighteen states and Washington, D.C. have received approval for aid through this program.

## FACTUAL ALLEGATIONS

**A.     Defendant's Servicing Misconduct**

45.     Defendant services home mortgage loans secured by residential properties owned by individual citizens of the Plaintiff States, and of the United States.

46.     Defendant engaged in trade or commerce in each of the Plaintiff States and is subject to the consumer protection laws of the Plaintiff States.

47.     Under the Plaintiff States' consumer protection laws, Defendant is prohibited from engaging in unfair or deceptive practices with respect to consumers.

48.     As mortgage servicers, Defendant regularly conducted or managed loss mitigation and foreclosure of single family residences on behalf of entities that hold the mortgage loans and that hired Defendant as a servicer.

49.     Pursuant to HUD regulations and FHA guidance, FHA-approved mortgage lenders and their servicers are required to engage in loss-mitigation efforts to avoid the foreclosure of HUD-insured single family residential mortgages.  E.g., 24 C.F.R. § 203.500 et seq.; Mortgagee Letter 2008-07 ("Treble Damages for Failure to Engage in Loss Mitigation") (Sept. 26, 2008); Mortgagee Letter 1996-25 ("Existing Alternatives to Foreclosure -- Loss Mitigation") (May 8, 1996).  Thus, when acting as a servicer, Defendant was required to refrain from foreclosing on any FHA insured mortgage where a default could be addressed by modifying the terms of the mortgage or other less-costly alternatives to foreclosure were available.

50.     Under the Treasury's various rescue and stimulus programs, Defendant received monetary incentives from the Federal government in exchange for the commitment to make efforts to modify defaulting borrowers' single family residential mortgages.  See, e.g., Making

Home Affordable Handbook v.1.0, ch. 13 ("Incentive Compensation") (Aug. 19, 2010).  Under the programs, Defendant agreed to fulfill requirements set forth in program guidelines and servicer participation agreements.

51.     Under FHA regulations and guidance and HAMP and other MHA servicer participation agreements, Defendant was obligated to follow specific requirements in the foreclosure of single family residential mortgages that are FHA insured, or where the servicer conducting the foreclosure is an MHA participant.

52.     As described below, in the course of their servicing of mortgage loans, Defendant engaged in a pattern of unfair and deceptive acts and practices in violation of the CFPA and the Plaintiff States' consumer protection laws, and violated federal laws, program requirements, and contractual requirements governing loan servicing.

### 1.     Defendant's Servicing Processes

53.     In the course of their conduct, management, and oversight of loan servicing in the United States, and in the Plaintiff States, Defendant engaged in a pattern of unfair and deceptive acts and practices, including:

    a.   failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;

    b.   charging unauthorized fees for default-related services;

    c.   imposing force-placed insurance when Defendant knew or should have known that borrowers already had adequate coverage; and

    d.   providing false or misleading information in response to borrower complaints.

### 2.     Defendant's Loan Modification and Loss Mitigation Processes

54.     In the course of their conduct, management, and oversight of loss mitigation and loan modifications in the United States and in the Plaintiff States, Defendant engaged in the following acts and practices:

a. failing to perform proper loan modification underwriting;

b. failing to gather or losing loan modification application documentation and other paper work;

c. failing to provide adequate staffing to implement programs;

d. failing to adequately train staff responsible for loan modifications;

e. failing to establish adequate processes for loan modifications;

f. allowing borrowers to stay in trial modifications for excessive time periods;

g. wrongfully denying modification applications;

h. failing to respond to borrower inquiries;

i. providing false or misleading information to consumers about the status of loss mitigation review, including while referring loans to foreclosure;

j. providing false or misleading information to consumers about the status of foreclosure proceedings where the borrower was in good faith actively pursuing a loss mitigation alternative offered by Defendant;

k. misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts;

l. failing to provide accurate and timely information to borrowers who sought information about loss mitigation services, including loan modifications;

m. falsely advising borrowers that they must be at least 60 days delinquent in loan payments to qualify for a loan modification;

n.  failing to properly calculate borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

o.  misrepresenting to borrowers that loan modification applications will be handled promptly when Defendant regularly failed to act on loan modifications in a timely manner;

p.  failing to properly process borrowers' applications for loan modifications, including failing to account for documents submitted by borrowers and failing to respond to borrowers' reasonable requests for information and assistance, and as a result, denying loan modifications to consumers who were eligible;

q.  failing to assign adequate staff resources with sufficient training to handle the demand from distressed borrowers; and

r.  providing false or misleading reasons for denial of loan modifications.

**3.  Defendant's Conduct Related to Foreclosures**

55.  In the course of its  conduct, management, and oversight of foreclosure activities in the United States and the Plaintiff States, Defendant has engaged in the following acts and practices:

a.  failing to properly identify the foreclosing party;

b.  charging unauthorized fees related to foreclosures;

c.  preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process

19

(including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments);

d.      preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits.  This practice of repeated false attestation of information in affidavits is popularly known as "robosigning."  Where third parties engaged in robosigning on behalf of Defendant, they did so with the knowledge and approval of Defendant;

e.      executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law;

f.      misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents;

g.      inappropriately charging servicing, document creation, recordation and other costs and expenses related to foreclosures; and

h.      inappropriately dual-tracking foreclosure and loan modification activities, and failing to communicate with borrowers with respect to foreclosure activities.

**B.      Defendant's Origination Misconduct**

**1.      Unfair and Deceptive Origination Practices**

56.      Under the Plaintiff States' consumer protection laws, Defendant is prohibited from engaging in unfair or deceptive practices with respect to consumers.

57.      Defendant regularly originates or originated mortgage loans.

58.      In the course of their origination of mortgage loans in the Plaintiff States, Defendant has engaged in a pattern of unfair and deceptive practices.  Among other

consequences, these practices caused borrowers in the Plaintiff States to enter into unaffordable mortgage loans that led to increased foreclosures in the Plaintiff States.

### 2.    The Direct Endorsement Program

59.    The FHA's Direct Endorsement Program is a vital part of its single-family insured mortgage program.  Under the Direct Endorsement Program, the FHA does not review or approve borrower loan applications.  Rather, the FHA approves lenders, called Direct Endorsement Lenders (DE Lenders), which have the responsibility and obligation for underwriting the loan and determining whether a proposed mortgage is eligible for FHA insurance according to FHA rules and requirements.  Unconditional DE Lenders employ Direct Endorsement Underwriters, who are authorized to perform  the underwriting of mortgage loans to be insured by the FHA.  The DE Lenders give the FHA full information and documentation about an underwritten loan only after the mortgage has closed, and both the underwriter and DE Lender certify compliance with FHA requirements in submitting the loan for mortgage insurance.  Although the FHA conducts regular desk reviews and brings enforcement actions, the FHA does not, and given its resources cannot, review the details of every loan.  The FHA therefore relies on the underwriter's and DE Lender's certifications and due diligence as evidence of the insurability of a mortgage.

60.    DE Lenders are responsible for all aspects of the mortgage application, the property analysis, and loan underwriting.  The FHA relies on DE Lenders to determine (1) a borrower's ability and willingness to repay a mortgage loan, 24 C.F.R. § 203.5(d), and (2) appraisal of the property offered as security.  24 C.F.R. § 203.5(e)(3).

61.     Careful compliance by DE Lenders with all FHA requirements is important in part because if a borrower defaults on an FHA-insured mortgage, the holder of the mortgage can submit a claim to the FHA for any loss associated with the defaulted mortgage.

62.     FHA regulations provide that each DE Lender owes the FHA the duty to "exercise the same level of care which it would exercise in obtaining and verifying information for a loan in which the mortgagee would be entirely dependent on the property as security to protect its investment." 24 C.F.R. § 203.5(c). DE Lenders also owe the FHA a common law duty of due diligence. See 48 Fed. Reg. 11928, 11932 (Mar. 22, 1983). In addition, a fiduciary relationship exists between DE Lenders and the FHA. DE Lenders have a duty to the FHA to act with the utmost good faith, candor, honesty, integrity, fairness, undivided loyalty, and fidelity, and to refrain from taking advantage of the FHA by misrepresentation or lack of disclosure. DE Lenders are required to exercise sound judgment, prudence, and due diligence on behalf of the FHA in endorsing mortgages for FHA insurance.

63.     DE Lenders are required to be familiar with, and to comply with, the current versions of governing FHA Handbooks and Mortgagee Letters, including HUD Handbook 4155.1, Mortgage Credit Analysis for Mortgage Insurance on One- to Four-Unit Mortgage Loans, HUD Handbook 4155.2, Lender's Guide to the Single Family Mortgage Insurance Process, and HUD Handbook 4150.2, Valuation Analysis for Single Family One- to Four-Unit Dwellings.

**3.     Failure to Comply with Underwriting Requirements**

64.     At all relevant times, Defendant was a mortgage lender that participated in HUD's Direct Endorsement Program. Subject to the requirements of the program, Defendant was authorized to "originate" - i.e., make – and  to underwrite mortgage loans to first-time and low-

income home buyers and to low income home owners refinancing mortgages, that were insured by the FHA, an agency within HUD. In exchange for having the authority to originate and underwrite FHA-insured loans,  Defendant was obligated to determine whether prospective borrowers met minimal credit-worthiness criteria and to certify to HUD that borrowers who received loans met the criteria.  In the event that an FHA-insured loan originated by Defendant goes into default, the FHA has guaranteed payment of the outstanding portion of the mortgage principal, accrued interest, and costs owed by the borrower.

65.    During the period January 2006 through March 2012, Defendant knowingly failed to comply with HUD regulations and requirements of the Direct Endorsement Program governing the origination and underwriting of FHA insured loans.  As a result, the FHA has thus far incurred hundreds of millions of dollars in damages with respect to claims paid for loans that Defendant knowingly made to unqualified borrowers.  Additionally, thousands of the Defendant's loans are currently in default and have not yet been submitted as claims to the FHA.

66.    Defendant has submitted claims for payment to the FHA with respect to FHA-insured mortgage loans originated and underwritten by Defendant in contravention of HUD regulations and the requirements of the Direct Endorsement Program during the period January 2006 through September 2013.

### 4.    Failure to Comply With Quality Control Requirements

67.    To qualify as a DE Lender, a lender has to have a fully functioning Quality Control (QC) Program that complies with FHA requirements from the date of its initial FHA approval until final surrender or termination of its approval.

68.    QC plans ensure that DE Lenders follow all the FHA requirements, ensure that procedures and personnel used by DE Lenders meet FHA requirements, and provide for the

correction, where necessary, and reporting of problems once a DE Lender becomes aware of their existence.

69.     Under its QC requirements, the FHA requires DE Lenders to review all early payment defaults. Early payment defaults are mortgages that go into default (i.e., are more than 60 days past due) within the first six payments of the mortgage.

70.     Early payment defaults may indicate problems in the underwriting process. DE Lenders are required to review early payment defaults so they can identify, correct, and report them to the FHA.

71.      A DE Lender whose QC program fails to provide for appropriate review of each early payment default is in violation of the FHA's QC requirements.

72.     Defendant submitted loans for insurance endorsement or claims for insurance benefits for FHA loans that Defendant endorsed or underwrote as a participant in the FHA's Direct Endorsement Program while failing to implement applicable QC measures.

73.     Defendant failed to adequately review early payment defaults.

74.     Defendant failed to dedicate sufficient staff to QC.

75.     Defendant failed to address dysfunctions in their QC system.

76.     The FHA has paid insurance claims relating to mortgages insured by FHA based on Defendant's false certifications that it had a properly established and functioning QC program.  The FHA would not have made a financial commitment to pay such mortgage insurance if it had known about Defendant's QC failures.

77.     To get and maintain DE Lender status, a DE Lender has to submit an annual certification to the FHA, stating that it conforms to all HUD/FHA regulations, handbooks, and policies.

78.     Absent such a certification, a DE Lender cannot submit a mortgage for FHA insurance endorsement.

79.     Contrary to the annual certifications made by Defendant, it failed to have a QC program as mandated by FHA requirements.

80.     The FHA has paid insurance claims relating to mortgages insured by FHA based on the Banks' false certifications.  The FHA would not have made a financial commitment to pay such mortgage insurance if it had known about Defendant's false certifications.

**C.     Defendant's Bankruptcy-Related Misconduct**

81.     In the ordinary course of their businesses, Defendant regularly appear as creditors, or on behalf of creditors, in bankruptcy cases, including bankruptcy cases commenced in this district and over which this Court has original jurisdiction under 28 U.S.C. § 1334, seeking the payment of money from bankruptcy estates and/or prosecuting motions seeking relief from the automatic stay to foreclose on consumer mortgages.

82.     Defendant has bankruptcy procedures that are utilized or relied upon by Defendant and its attorneys, contractors, and other agents when Defendant files documents, including proofs of claim and motions seeking relief from the automatic stay in bankruptcy cases.  Use of these bankruptcy procedures has resulted in an insufficient level of oversight and safeguards regarding pleadings and documents filed by Defendant or its agents in bankruptcy cases and their conduct during the bankruptcy cases.

83.     Use of these bankruptcy procedures has resulted in the filing of signed pleadings and documents in bankruptcy cases as to which the signatory has not conducted a reasonable inquiry into the factual contentions or allegations, as required by applicable law, including Fed. R. Civ. P. 11 and Fed. R. Bankr. P. 9011.

84.     Use of these bankruptcy procedures has also resulted in a failure to exercise adequate supervision over Defendant's attorneys, contractors, and other agents in bankruptcy proceedings.

85.     As a result of the use of inadequate bankruptcy procedures, the conduct of Defendant or its agents has resulted in, among other things, some or all of the following:

    a.      making representations that were inaccurate, misleading, false, or for which Defendant, at the time, did not have a reasonable basis to make, including without limitation representations contained in proofs of claim under 11 U.S.C. § 501, motions for relief from the automatic stay under 11 U.S.C. § 362, or other documents;

    b.       filing proofs of claim, motions for relief from stay, or other documents that failed to include documentation required under the Federal Rules of Bankruptcy Procedure, local court rules, local court standing orders, or other applicable rules or law, such as the original or a duplicate of the writing on which the secured claim is based, evidence that the security interest has been perfected, a statement setting forth the terms of and any documentation of a transfer of the claim, or other documentation;

    c.      filing lost note affidavits in connection with proofs of claim, motions for relief from stay, or other documents that were inaccurate, misleading, or false, or for which Defendant, at the time, did not have a reasonable basis to make;

    d.      filing proofs of claim, motions for relief from stay, or other documents where Defendant sought payment from debtors or bankruptcy estates for amounts that Defendant was not legally entitled to collect, such as seeking principal, interest, fees, escrow amounts, and/or advances that were not incurred, were in excess of what is collectable under the loan documents, were not reasonable or appropriate to protect the

note holder's interest in the property and rights under the security instrument, or were inconsistent with an approved loan modification;

    e.    filing proofs of claim or motions for relief from stay without required itemizations for principal, interest, fees, escrow amounts, and/or advances;

    f.    filing proofs of claim, motions for relief from stay, or other documents that inaccurately represented or failed to document ownership of the claim or right to seek relief;

    g.    commencing collection activities against the debtor or the debtor's property without court authorization, or in violation of the terms of a confirmed chapter 13 plan, the discharge injunction under 11 U.S.C. § 524, or the automatic stay under 11 U.S.C. § 362;

    h.    filing proofs of claim, motions for relief from stay, or other documents or otherwise commencing collection activities seeking to recover amounts on debts that have been paid or satisfied, including through a refinance of the debt, or a sale or short sale of the collateral;

    i.    collecting, or attempting to collect, attorney's fees and other charges for the preparation and filing of proofs of claim, motions for relief from stay, or other documents, that Defendant ultimately withdrew or that a court denied;

    j.    failing to promptly and accurately apply payments resulting in inaccurate loan accounting and wrongful or inaccurate allegations of loan defaults;

    k.    filing proofs of claim, motions for relief from stay, or other documents that inaccurately or falsely represented they were signed by a person with direct knowledge of the matters alleged in the filing;

l.      filing affidavits or other documents requiring notarization where Defendant inaccurately or falsely represented that the documents were validly notarized;

m.      failing to provide required notices to the debtor, trustee, or the court regarding payment changes resulting from a change in interest rate and/or escrow charges;

n.      failing to provide notice to the debtor, trustee, or court regarding fees, charges, and expenses assessed or incurred after the petition date; or

o.      failing to promptly provide a reconciliation of payments received with respect to the debtor's obligations in the case or failing to appropriately update Defendant's systems of record, including upon dismissal or closure of a bankruptcy case.

86.     Defendant implemented and relied upon inadequate bankruptcy procedures despite having actual or constructive notice that such procedures could, and did, lead to the errors described above.

87.     Use of these bankruptcy procedures has also resulted in Defendant seeking inappropriate relief from debtors under the Bankruptcy Code, including under 11 U.S.C. §§ 362 and 501, and in violation of 11 U.S.C. § 524.

## COUNT I

### VIOLATIONS OF STATE LAW PROHIBITING UNFAIR AND DECEPTIVE CONSUMER PRACTICES WITH RESPECT TO LOAN SERVICING

88.     The allegations in paragraphs 1 through 87 above are incorporated herein by reference.

89.     The loan servicing conduct of Defendant, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each State.

90.     Defendant's unlawful conduct has resulted in injury to the Plaintiff States and citizens of the Plaintiff States who have had home loans serviced by Defendant.  The harm sustained by such citizens includes payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, improper denial of loss mitigation relief, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm to the Plaintiff States includes the subversion of their legal process and the sustained violations of their laws. The Plaintiff States have had to incur substantial expenses in the investigations and attempts to obtain remedies for Defendant's unlawful conduct.

## COUNT II

**VIOLATIONS OF STATE LAW PROHIBITING
UNFAIR AND DECEPTIVE CONSUMER PRACTICES
WITH RESPECT TO FORECLOSURE PROCESSING**

91.     The allegations in paragraphs 1 through 87 above are incorporated herein by reference.

92.     The foreclosure processing conduct of Defendant, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each State.

93.     Defendant's unlawful conduct has resulted in injury to the Plaintiff States and citizens of the Plaintiff States who have had home loans serviced by Defendant.  The harm sustained by such citizens includes payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, improper denial of loss mitigation relief, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm to the Plaintiff States includes the subversion of their legal process and the sustained violations of their laws. The Plaintiff States have had to incur substantial expenses in the investigations and attempts to obtain remedies for Defendant's unlawful conduct.

## COUNT III

### VIOLATIONS OF STATE LAW PROHIBITING UNFAIR AND
### DECEPTIVE CONSUMER PRACTICES WITH RESPECT TO LOAN ORIGINATION

94.     The allegations in paragraphs 1 through 87 above are incorporated herein by reference.

95.     The loan origination conduct of the Defendant, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each State.

96.     Defendant's unlawful conduct has resulted in injury to the Plaintiff States and citizens of the Plaintiff States who have had home loans originated by Defendant.  The harm sustained by such citizens includes payment of improper fees and charges, unreasonably high mortgage payments, unaffordable mortgages, and loss of homes.  The harm to the Plaintiff States includes the subversion of their legal processes and the sustained violations of their laws.  The Plaintiff States have had to incur substantial expenses in the investigations and attempts to obtain remedies for Defendant's unlawful conduct.

## COUNT IV

### VIOLATIONS OF THE CONSUMER FINANCIAL PROTECTION ACT OF 2010,
### 12 U.S.C. §§ 5301 ET SEQ. (CFPA) WITH RESPECT TO LOAN SERVICING

97.     The allegations in paragraphs 1 through 87 above are incorporated herein by reference.

98.     In numerous instances, the loan servicing conduct of Defendant, as described above, constitutes unfair and deceptive acts or practices in violation of Sections 1031(a) and 1036 of the CFPA, 12 U.S.C. §§ 5531(a) and 5536.

## COUNT V

### VIOLATIONS OF THE CONSUMER FINANCIAL PROTECTION ACT OF 2010, 12 U.S.C. §§ 5301 ET SEQ. (CFPA) WITH RESPECT TO FORECLOSURE PROCESSING

99.     The allegations in paragraphs 1 through 87 above are incorporated herein by reference.

100.    In numerous instances, the foreclosure processing conduct of Defendant, as described above, constitutes unfair and deceptive acts or practices in violation of Sections 1031(a) and 1036 of the CFPA, 12 U.S.C. §§ 5531(a) and 5536.

## COUNT VI

### VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), (a)(1)(C) and (a)(1)(G) (2009), and 31 U.S.C. §3729(a)(1), (a)(2), (a)(3) and (a)(7) (1986)

101.    The allegations in paragraphs 1 through 87 above are incorporated herein by reference.

102.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented to the United States false or fraudulent claims for payment or approval, including but not limited to improper claims for payment of FHA residential mortgage insurance or guarantees.

103.    In so doing, the Defendant acted knowingly; that is, Defendant possessed actual knowledge that the claims for payment were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the claims for payment; or acted in reckless disregard of the truth or falsity of the claims for payment.

104.    By virtue of the acts described above, Defendant made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

105.     In so doing, the Defendant acted knowingly; that is, Defendant possessed actual knowledge that the information, statements and representations were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the information, statements and representations; or acted in reckless disregard of the truth or falsity of the information, statements and representations.

106.     By virtue of the acts described above, Defendant made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, and concealed or improperly avoided or decreased an obligation to pay or transmit money or property to the United States.

107.     In so doing, the Defendant acted knowingly; that is, Defendant possessed actual knowledge that the information, statements and representations were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the information, statements and representations; or acted in reckless disregard of the truth or falsity of the information, statements and representations.

108.     By virtue of the acts described above, Defendant conspired with one or more persons: to present or cause to be presented to the United States false or fraudulent claims for payment or approval; to make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim; and, to make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government; or to conceal or improperly avoid or decrease an obligation to pay or transmit money or property to the United States.

**COUNT VII**

**VIOLATION OF THE FINANCIAL INSTITUTIONS
REFORM, RECOVERY AND ENFORCEMENT ACT OF 1989,
12 U.S.C. § 1833A (FIRREA)**

109.   The allegations in paragraphs 1 through 87 above are incorporated herein by reference.

110.   Defendant knowingly made or presented false and fictitious claims to Departments of the United States.

111.   The claims were material to decisions of the United States.

112.   In connection with matters within the jurisdiction of the United States, Defendant knowingly and willfully engaged in conduct that:  (a) falsified, concealed or covered up by artifices, schemes or devices, material facts, (b) made statements and representations that violate 18 U.S.C. § 1001(a), and (c) made and used false writings or documents knowing the same to contain materially false and fictitious statements and entries.

113.   Defendant's schemes affected federally insured financial institutions.

**COUNT VIII**

**DECLARATORY JUDGMENT UNDER
28 U.S.C. §§ 2201 and 2202
REGARDING DEFENDANT'S BANKRUPTCY MISCONDUCT**

114.   The allegations in paragraphs 1 through 87 above are incorporated herein by reference.

115.   Defendant implemented and relied on inadequate bankruptcy procedures and thereby have prejudiced debtors, creditors, including the United States, and the courts in bankruptcy cases, have caused increased errors, delays, and costs of administration in bankruptcy cases, and constitute a continuing abuse of the bankruptcy process.

116.     Defendant implemented and relied on inadequate bankruptcy procedures and thereby have violated the standards of conduct required of creditors by applicable law, including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or have caused violations of such law.

117.     Defendant implemented and relied upon inadequate bankruptcy procedures that abused the bankruptcy process.

118.     Defendant's unlawful conduct has resulted in injury to the United States and to debtors in bankruptcy who have had their home loans serviced by Defendant.  The harm sustained by such debtors includes payment of improper fees and charges, unreasonable delays and expenses in their bankruptcy cases, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm sustained by the United States includes reduced and delayed recoveries to the United States in its capacity as a creditor in bankruptcy cases.  Such conduct has also caused the United States to assume increased administrative duties in monitoring bankruptcy cases, and to incur expenses in the investigations and litigation of Defendant's unlawful conduct.

## COUNT IX

### DAMAGES UNDER COMMON LAW
### RELATED TO DEFENDANT'S BANKRUPTCY MISCONDUCT

119.     The allegations in paragraphs 1 through 87 above are incorporated herein by reference.

120.     Defendant implemented and relied on inadequate bankruptcy procedures and thereby has prejudiced debtors, creditors, including the United States, and the courts in bankruptcy cases, has led to increased errors, delays, and costs of administration in bankruptcy cases, and constitutes a continuing abuse of the bankruptcy process.

121.     Defendant's abuse of the bankruptcy process violated a duty or duties owed by Defendant to the debtors, the courts, and other parties in such bankruptcy cases, including the United States.

122.     Defendant's abuse of the bankruptcy process violates a federal policy, reflected in the Bankruptcy Code and the Bankruptcy Rules, in favor of the efficient and equitable administration of bankruptcy cases, as well as the policy of ensuring accuracy in claims submitted to the bankruptcy courts.

123.     Defendant's unlawful conduct has resulted in injury to the United States and to debtors in bankruptcy who have had their home loans serviced by Defendant.  The harm sustained by such debtors includes payment of improper fees and charges, unreasonable delays and expenses in their bankruptcy cases, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm sustained by the United States includes reduced and delayed recoveries to the United States in its capacity as a creditor in bankruptcy cases.  Such conduct has also caused the United States to assume increased administrative duties in monitoring bankruptcy cases, and to incur expenses in the investigations and litigation of Defendant's unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States, the Bureau, and the Plaintiff States respectfully request that judgment be entered in their favor and against Defendant as follows:

1.     On Count I, judgment against the Defendant, injunctive relief to restrain Defendant from further unlawful conduct; an order requiring disgorgement of unlawful gains obtained by Defendant as a result of their unlawful conduct; restitution or other remedial relief to

compensate individual victims of Defendant's unlawful conduct; civil penalties; and attorney fees and costs of investigation.

2.      On Count II, judgment against the Defendant, injunctive relief to restrain Defendant from further unlawful conduct; an order requiring disgorgement of unlawful gains obtained by Defendant as a result of their unlawful conduct; restitution or other remedial relief to compensate individual victims of Defendant's unlawful conduct; civil penalties; and attorney fees and costs of investigation.

3.      On Count III, judgment against the Defendant, injunctive relief to restrain Defendant from further unlawful conduct; an order requiring disgorgement of unlawful gains obtained by Defendant as a result of their unlawful conduct; restitution or other remedial relief to compensate individual victims of Defendant's unlawful conduct; civil penalties; and attorney fees and costs of investigation.

4.      On Count IV, judgment against the Defendant, injunctive relief to restrain Defendant from further unlawful conduct; an order requiring such relief as the Court finds necessary to redress consumers; an order requiring disgorgement by Defendant of any unlawful gains; civil penalties; an order awarding the CFPB costs of bringing this action, and any additional relief as the Court may determine to be just and proper;

5.      On Count V, judgment against the Defendant, injunctive relief to restrain Defendant from further unlawful conduct; an order requiring such relief as the Court finds necessary to redress consumers; an order requiring disgorgement by Defendant of any unlawful gains; civil penalties; an order awarding the CFPB costs of bringing this action, and any additional relief as the Court may determine to be just and proper;

36

6.      On Count VI, for treble damages and civil penalties in an amount as the Court may determine between $5,500 and $11,000 for each violation;

7.      On Count VII, for a civil penalty of up to $1 million dollars for each violation, plus such other relief as is in connection with each false entry or assignment, or such greater amount as provided by law;

8.      On Counts VIII and IX, for appropriate declaratory relief and for compensatory damages, in an amount to be determined at trial, and for necessary post-judgment relief to prohibit the Defendant from violating 11 U.S.C. §§ 362 and 501, and from acting in violation of 11 U.S.C. § 524; and

9.      For all other and further relief as the Court may deem just proper and equitable.

For the United States:

TONY WEST
Associate Attorney General

STUART F. DELERY
Assistant Attorney General
Civil Division

RONALD C. MACHEN JR.

United States Attorney for the
District of Columbia


KEITH V. MORGAN
Assistant United States Attorney
United States Attorney's Office
555 4th Street, NW, Room E4814
Washington, DC 20530
Tel.: 202-514-7228
Fax: 202-514-8780


MICHAEL D. GRANSTON
RENÉE BROOKER
WILLIAM C. EDGAR
DANIEL H. FRUCTER
Attorneys, Civil Division
601 D Street, N.W.
Washington, D.C., 20005
Tel.: (202)-353-7950
Fax: (202) 514-0280

RAMONA ELLIOTT
General Counsel
Executive Office for U.S. Trustees
441 G Street, N.W., Suite 6150
Washington, DC 20530
Tel.: 202-307-1399
Fax: 202-307-2397

For the Consumer Financial Protection Bureau:

*Rachel Rodman*

LUCY E. MORRIS
Deputy Enforcement Director
CARA PETERSEN
Assistant Litigation Deputy
RACHEL RODMAN
Enforcement Attorney
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Tel.:   202-435-7964

For the State of Alaska:


CYNTHIA C. DRINKWATER
Assistant Attorney General
Alaska Attorney General's Office
1031 W. 4th Avenue, Ste. 200
Anchorage, AK  99501
Tel.:   907-269-5200
Fax:   907-264-8554

For the State of Alabama:


_____
NOEL S. BARNES
Assistant Attorney General
Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL  36130
Tel.:  334-242-7335
Fax:  334-242-2433

For the State of Arkansas:

_____
JAMES B. DEPRIEST
Ark. Bar No. 80038
Deputy Attorney General
Office of the Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas  72201
Tel.: 501-682-5028
Fax: 501-682-8118

For the State of Arizona:

THOMAS C. HORNE
Arizona Attorney General
by Jeremy T. Shorbe
Assistant Attorney General
400 W. Congress Street, Suite S315
Tucson, AZ  85701
Tel.:   520-628-6504
Fax:   520-628-6532

For the State of California:

KAMALA D. HARRIS
Attorney General

TINA CHAROENPONG
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel.:  213-897-2000
Fax:  213-897-4951

For the State of Colorado, *ex. rel.*

JOHN W. SUTHERS, Attorney General:

JENNIFER MINER DETHMERS
Assistant Attorney General
Consumer Protection Section
Colorado Attorney General's Office
1300 Broadway, 7th Floor
Denver, Colorado 80203
Tel.:   720-508-6228
Fax:   720-508-6040

For the State of Connecticut:

MATTHEW J. BUDZIK
JOSEPH J. CHAMBERS
Assistant Attorneys General
Office of the Connecticut Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel:   860-808-5270
Fax:  860-808-5385

For the District of Columbia:

IRVIN B. NATHAN
Attorney General for the District of Columbia

ELLEN A. EFROS
Deputy Attorney General
Public Interest Division


_____
BENNETT RUSHKOFF (D.C. Bar #386925)
Chief, Public Advocacy Section
GARY TAN (D.C. Bar #987796)
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, N.W., Suite 600 South
Washington, DC 20001
Tel: 202-727-5173
Email: bennett.rushkoff@dc.gov; gary.tan@dc.gov

For the State of Delaware:

_____

MATTHEW LINTNER
Director, Fraud Division
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE  19801
Tel.:   302-577-8935
Fax:   302-577-6499

For the State of Florida:

PAMELA JO BONDI
Attorney General

PATRICIA A. CONNERS
Associate Deputy Attorney General

VICTORIA A. BUTLER
Assistant Attorney General
Bureau Chief, Consumer Protection Division
3507 E. Frontage Road
Suite 325
Tampa, FL 33607
Tel:   813-287-7950
Fax:  813-281-5515

For the State of Georgia:

_____
JEFFREY W. STUMP
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Tel.:   404-656-3337
Fax:   404-656-0677

For the State of Hawaii:


JAMES C. PAIGE
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii  96813
Tel:  808-586-1180
Fax:  808-586-1205

For the State of Idaho

LAWRENCE G. WASDEN, Attorney General:

_____
STEPHANIE GUYON
Deputy Attorney General
Office of the Idaho Attorney General
954 W. Jefferson St., 2nd Fl.
P.O. Box 83720
Boise, ID 83720-0010
Tel.:   208-334-2424
Fax:   208-334-4151

For the State of Illinois:

LISA MADIGAN
Attorney General


_____

DEBORAH HAGAN
Chief, Consumer Protection Division
SUSAN ELLIS
Chief, Consumer Fraud Bureau
ANDREW DOUGHERTY
Assistant Attorney General
Illinois Attorney General's Office
100 W. Randolph, 12th Floor
Chicago, IL, 60601
Tel.:   312-814-4982
Fax:   312-814-2593

For the State of Indiana:

ABIGAIL LAWLIS KUZMA
Director and Chief Counsel
Consumer Protection Division
Indiana Office of Attorney General
302 West Washington St., IGCS 5th Fl.
Indianapolis, Indiana 46204
Tel.:   317-234-6843
Fax:   317-233-4393

For the State of Iowa:


_____

PATRICK MADIGAN
Assistant Attorney General
Iowa Attorney General's Office
1305 East Walnut St.
Des Moines, IA 50319
Patrick.Madigan@Iowa.gov
Tel:   515-281-5926
Fax:  515- 281-6771

For the State of Kansas:


MEGHAN E. STOPPEL
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Tel.:   785-296-3751
Fax:   785-291-3699

For the Commonwealth of Kentucky:


JACK CONWAY
Attorney General
Commonwealth of Kentucky
State Capitol, Suite 118
700 Capital Avenue
Frankfort, Kentucky 40601-3449
Tel.:   502-696-5300
Fax:   502-564-2894

For the State of Louisiana:

JAMES D. "BUDDY" CALDWELL
Attorney General
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel.: 225-326-6705

For The Commonwealth Of
Massachusetts:

MARTHA COAKLEY
Attorney General


_____
LISA R. DYEN
Mass. BBO #676264
*Assistant Attorney General*
Public Protection and Advocacy Bureau
Consumer Protection Division
One Ashburton Place
Boston, MA 02108
Tel: 617-727-2200

For the State of Maine:


JANET T. MILLS
Attorney General
Burton Cross Office Building, 6th Floor
111 Sewall Street
6 State House Station
Augusta, Maine 04330
Tel.:   207-626-8800
Fax:   207-624-7730

For the State of Maryland:

DOUGLAS F. GANSLER
Attorney General


_Lucy A. Cardwell_
LUCY A. CARDWELL
Assistant Attorney General
Office of the Attorney General
 of Maryland
200 Saint Paul Place
Baltimore, MD  21202
Tel:  410-576-6337
Fax:  410-576-6566

For the State of Minnesota:

LORI SWANSON
Attorney General, State of Minnesota


NATHAN BRENNAMAN
Deputy Attorney General
Minnesota Attorney General's Office
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel.:   651-757-1415
Fax:   651-296-7438

For the State of Missouri:

CHRIS KOSTER
Attorney General

RYAN S. ASBRIDGE
Missouri Bar No. 61440
Assistant Attorney General
Consumer Protection Division
PO Box 899
Jefferson City, MO  65102
Tel.:   573-751-7677
Fax:   573-751-2041

For the State of Mississippi:

JIM HOOD, ATTORNEY GENERAL

BY:  *Bridgette W. Wiggins*

Bridgette W. Wiggins, MSB No. 9676
Special Assistant Attorneys General
Post Office Box 22947
Jackson, MS 39225
Telephone:     601-359-4279
Facsimile:     601-359-4231

For the State of Montana:


TIMOTHY C. FOX
Attorney General
CHUCK MUNSON
Assistant Attorney General
Montana Department of Justice
215 N. Sanders
Helena MT 59624
Tel.:   406-444-2026
Fax:   406-444-3549

For the Attorney General of North Carolina:

ROY COOPER
Attorney General

PHILLIP K. WOODS
Special Deputy Attorney General
N.C. Department of Justice
P. O. Box 629
Raleigh, NC 27602
Tel.:   919-716-6000
Fax:   919-716-6050
Email:  pwoods@ncdoj.gov

For the State of North Dakota

WAYNE STENEHJEM
Attorney General


PARRELL D. GROSSMAN
(ID No. 04684)
Assistant Attorney General
Director, Consumer Protection and
Antitrust Division
Office of Attorney General
Gateway Professional Center
1050 E Interstate Ave, Ste. 200
Bismarck, ND  58503-5574
Tel:  701-328-5570
Fax: 701-328-5568

For the State of Nebraska:

JON BRUNING
Attorney General

ABIGAIL M. STEMPSON, #23329
Assistant Attorney General
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509-8920
Tel.:   402-471-2811
Fax:   402-471-4725

For the State of New Hampshire:


JOSEPH A. FOSTER
Attorney General
N.H. Department of Justice
33 Capitol Street
Concord, New Hampshire 03301
Tel.:   603-271-3658
Fax:   603-271-2110

For the State of New Jersey:

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY

LORRAINE K. RAK
Deputy Attorney General
Chief, Consumer Fraud Prosecution Section
Division of Law
124 Halsey Street – 5th Floor
P.O. Box 45029
Newark, New Jersey 07101
Tel.:   973-877-1280
Fax:   973-648-4887

For the State of New Mexico:


GARY K. KING, Attorney General
KAREN J. MEYERS, Assistant Attorney General
Office of New Mexico Attorney General
PO Drawer 1508
Santa Fe, NM 87504-1508
Tel:  505-222-9100
Fax:  505-222-9033

For the State of New York:


JANE M. AZIA
Bureau Chief
Bureau of Consumer Frauds & Protection
Office of the New York State Attorney General
120 Broadway
New York, NY 10271
Tel.:   212-416-8727
Fax:   212-416-8787

For the Ohio Attorney General
MIKE DEWINE

MATTHEW J. LAMPKE (0067973)
Mortgage Foreclosure Counsel
Ohio Attorney General
30 E. Broad St., 15th Floor
Columbus, OH 43215
Tel.:   614-466-8569
Fax:   866-403-3979

For the State of Oregon,
Attorney General
ELLEN F. ROSENBLUM:

SIMON WHANG
Assistant Attorney General
Oregon Department of Justice
Financial Fraud/Consumer Protection
1515 SW 5th Avenue, Ste. 410
Portland, OR 97201
Tel.:   971-673-1880
Fax:   971-673-1902

For the State of South Carolina:

*John W. McIntosh*

ALAN WILSON
Attorney General
JOHN W. MCINTOSH
Chief Deputy Attorney General
C. HAVIRD JONES, JR.
Senior Assistant Deputy Attorney General
JARED Q. LIBET
Assistant Deputy Attorney General
South Carolina Attorney General's Office
1000 Assembly Street, Room 519
Columbia, SC 29201
Tel.:   803-734-3970
Fax:   803-734-3677

For the State of South Dakota:

PHILIP D. CARLSON
Assistant Attorney General
South Dakota Attorney General's Office
Consumer Protection Division
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel.:  605-773-3215
Fax:  605-773-4106

For the State of Tennessee:

ROBERT E. COOPER, JR.
Attorney General and Reporter
Office of the Tennessee Attorney General
425 Fifth Avenue North
Nashville, TN 37243-3400
Tel.:   615-741-3491
Fax:   615-741-2009

For the State of Texas:

JAMES A. DAROSS
State Bar No. 05391500
Assistant Attorney General
Consumer Protection Division
401 E. Franklin Avenue, Suite 530
El Paso, Texas 79901
Tel.: 915- 834-5800
Fax: 915-542-1546

For the State of Utah:

SEAN D. REYES
Utah Attorney General
350 North State Street, #230
Salt Lake City, UT 84114-2320
Tel.: 801-538-1191
Fax: 801-538-1121

For The Commonwealth of Virginia,
*ex rel.* MARK R. HERRING,
Attorney General:


DAVID B. IRVIN (VSB #23927)
Senior Assistant Attorney General
MARK S. KUBIAK (VSB #73119)
Assistant Attorney General
Office of Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
Tel.:   804-786-4047
Fax:   804-786-0122

For the State of Vermont:


_____
WILLIAM H. SORRELL
Attorney General
109 State Street
Montpelier VT 05609-1001
(802) 828-3171

For the State of Washington:

ROBERT W. FERGUSON
Attorney General

DAVID W. HUEY, WSBA No. 31380
Senior Counsel
Consumer Protection Division
Office of the Attorney General
1250 Pacific Avenue, Suite 105
PO Box 2317
Tacoma, WA 98402-4411
Tel:  (253) 593-5243

For the State of Wisconsin:

J.B. VAN HOLLEN
Attorney General

HOLLY C. POMRANING
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Tel:   608-266-5410
Fax:   608-267-8906

For the State of  West Virginia:

_____

PATRICK MORRISEY
Attorney General
State Capitol, Room 26E
Charleston, WV  25305-0220
Tel.:   304-558-2021
Fax:   304-558-0140

For the State of Wyoming:

PETER K. MICHAEL
Wyoming Attorney General
Wyoming Attorney General's Office
123 State Capitol Bldg
200 W. 24th Street
Cheyenne, WY 82002
Tel.:  307-777-7847
Fax:  307-777-3435